Elma A. GLOCKER, Personal Representative of Edwin L. Glocker, Plaintiff–Appellant,

v.

W.R. GRACE & COMPANY; Aetna Life Insurance Company, Defendants–Appellees.

No. 91–2262.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1992.

Decided Sept. 4, 1992.

---

Peter Baldwin Turney, Baltimore, Md., argued for plaintiff-appellant.

Jeffrey Peabody Ayres, Venable, Baetjer & Howard, Baltimore, Md., argued (Todd J. Horn, Venable, Baetjer & Howard, on the brief), for defendants-appellees.

Before RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.

BUTZNER, Senior Circuit Judge:

Elma A. Glocker, personal representative of her deceased husband (Mrs. Glocker), sued W.R. Grace & Co. and Aetna Life Insurance Company pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA). In count one, Mrs. Glocker seeks reimbursement under Grace's retiree's employee welfare benefit plan and medicare supplement benefits plan (collectively, Plan) for the cost of private duty nursing services provided to her husband, Edwin M. Glocker, a former employee of Grace. In a second count she seeks civil penalties against Grace for its alleged failure to provide her with certain documents.

The principal issue in this appeal is whether the district court should have reviewed Grace's denial of reimbursement for the cost of special duty nurses *de novo*, as Mrs. Glocker contends, or for abuse of discretion, as Grace contends. The district court applied the abuse of discretion stan-

dard and granted summary judgment in favor of Grace. Because the Plan does not grant the administrator discretion, we vacate the judgment and remand the case for reconsideration by the district court under the *de novo* standard. Because Mrs. Glocker needed material that Grace did not timely provide, the district court on remand should reconsider its denial of civil penalties.

## I

When Mr. Glocker retired from Grace on May 1, 1973, Grace provided him with post-retirement medical benefits under an retiree's employee welfare plan. Since Mr. Glocker was over 65, he received coverage under Grace's Medicare Supplement Benefits–I Plan. Both the general provisions of the welfare plan and the medicare supplement plan exclude expenses for custodial nursing care from coverage.

In 1985, a urologist discovered that Mr. Glocker had prostate cancer. Mr. Glocker was treated with radiation and chemotherapy for the next three years. In 1988 when he was hospitalized, he had private-duty nurses pursuant to his doctor's recommendation. His doctor recommended the nurses to ensure that Mr. Glocker did not choke on his own saliva or phlegm, that he did not remove some of the tubes attached to him, that he did not lie on his back and increase the risk of pneumonia, that any instance of apnea did not pass unnoticed, and that he received oxygen regularly. The doctor thought that the regular nursing staff could not adequately guard against these risks because of their workload. The hospital obtained some private-duty nurses and charged their services to Mr. Glocker's hospital bill. The hospital obtained other nurses who billed Mr. Glocker directly. After Mr. Glocker died, Mrs. Glocker filed a claim with AEtna seeking reimbursement for the expense of the nurses. AEtna and Grace employees reviewed the claim and concluded that the expenses were not covered by the Plan, because in their view the nurses provided only custodial care.

## II

Grace contracted with AEtna for the administration and operation of the Plan. Section 5 of the contract specified that AEtna in performing its obligations "is acting only as agent of" Grace. This section also stipulated that for the purpose of ERISA and similar state laws, Grace shall "be deemed the administrator of the Plan."

Grace furnished the Glockers a handbook containing a summary of the Plan as required by 29 U.S.C. § 1022 and 29 C.F.R. §§ 2520.102–2 and 2520.102–3. The handbook states that private-duty nursing is covered only if "a doctor certifies that such care is *medically necessary*, subject to the approval of AEtna."

The Plan in contrast does not require that private-duty nursing care be subject to the approval of AEtna in order to be covered. The difference between the handbook and the Plan raises the question: which document governs? The answer is provided by the handbook. It states: "You should know that each qualified plan also has official documents; this handbook isn't an official document. The official documents—not this booklet—will be used to resolve any question about benefits from the Plans."

■ Grace, having represented to its employees that the Plan—not the handbook—governed questions about benefits, cannot now repudiate this representation and rely on statements in the handbook that are less favorable to Mrs. Glocker. In *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192 (10th Cir.1992), the court applied the same reasoning where the provision in the plan benefited the beneficiary rather than the employer, concluding that the plan "by operation of Equicor's own disclaimer" controls. 953 F.2d at 1201. The disclaimer, to which the *McGee* court referred, was similar to Grace's. It, too, provided that the plan—not the handbook—controls.

This is not to say that in every case the plan prevails when there is a disclaimer in the handbook. In *Pierce v. Security Trust Life Ins. Co.*, —— F.2d —— (4th Cir.1992), citing 29 U.S.C. § 1022, legislative history,

and abundant precedent, we held that employees can rely on the handbook—or, as it is frequently called, the Summary Plan Description (SPD)—despite a disclaimer in the handbook (or SPD) that ostensibly designates the Plan, with its different provisions, as the primary document. *Pierce,* —— F.2d at ——, ——. The distinction between this case and *Pierce* is this: in this case, where the handbook favors the employer, the employer cannot disavow a disclaimer in the handbook representing that the Plan controls; in *Pierce,* where the Plan favors the employer, the employer cannot invoke the Plan by relying on a disclaimer in the handbook that, contrary to the intent of Congress, designates the Plan as the controlling document.

■ Nothing in the Plan gives AEtna discretionary authority. In view of Grace's disclaimer, we reject its contention that where the Plan is silent the handbook controls. Also, the Plan does not confer on Grace, the administrator of the Plan, discretionary authority with respect to eligibility for benefits or the interpretation of the Plan. Consequently, the district court should have reviewed the denial of benefits *de novo. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

■ *De novo* review requires credibility findings and weighing the testimony of Mr. Glocker's treating physician against the testimony of Grace's experts. It also requires weighing the evidence derived from nurses' charts and the testimony of the private-duty nurses. For these reasons, we conclude that the district court is in a much better position than this court to conduct *de novo* review of the denial of the benefit of private nurses.

Grace argues that the requirements for reimbursement of private-duty nurses set forth in the handbook foreclose recovery by Mrs. Glocker. These requirements are different than those set forth in the Plan. As we have previously explained, the provisions of the Plan trump the provisions of the handbook, and the district court on remand should look to the Plan—not the handbook—for guidance.

The parties differ on the proper interpretation of the phrases that serve to negate the concept of custodial care. Pages 2–3 of the general provisions state that care is not custodial when it "must be combined with other necessary therapeutic services and supplies ... to establish a program of medical treatment which can reasonably be expected to contribute substantially to the improvement of the individual's medical condition." Page 7 states that care is not custodial if it involves a program of medical treatment "which can reasonably be expected to substantially improve the individual's medical condition." Grace takes the position that these phrases refer to ultimate improvement in the sense of cure. Because Mr. Glocker's condition was terminal, without realistic hope of remission, Grace argues that the nursing service was custodial. Mrs. Glocker argues that the phrases should be interpreted to refer to intermediate improvement such as the administration of medicine to alleviate pain or procedures to prevent choking or interference with catheters.

The interpretation Grace placed on the phrases might have been acceptable had Grace been imbued with discretion. Nevertheless, the same interpretation may not be appropriate when the claim must be reviewed *de novo.* In *Firestone,* 489 U.S. at 112, 109 S.Ct. at 954, the Court observed: "As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation." The Court instructed: "The terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of intention of the settlor with respect to the trust as is not inadmissible.'" 489 U.S. at 112, 109 S.Ct. at 954, quoting Restatement (Second) of Trusts § 4 cmt. d (1959). The Court also observed:

The trust law *de novo* standard of review is consistent with the judicial interpretation of employee benefit plans prior to the enactment of ERISA. Actions challenging an employer's denial of benefits before the enactment of ERISA

were governed by principles of contract law. If the plan did not give the employer or administrator discretionary or final authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent.

489 U.S. at 112–13, 109 S.Ct. at 954–56.

■ On remand the district court, heeding *Firestone*, should interpret the Plan in accordance with the principles of contract law. The primary effort should be to ascertain the intent of the parties, or the settlor if the Plan was not negotiated. Alleged ambiguities should be reconciled, if possible, by giving language its ordinary meaning and, if necessary, by admitting relevant, extrinsic evidence. If ambiguities remain, the Plan should be construed against the drafter, in this case Grace, which apparently relied on its agent, AEtna, to prepare the Plan. *See Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 105–06 (8th Cir.1992); *cf. Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 541 (9th Cir. 1990).

### III

Mrs. Glocker claims that she should receive damages because Grace and AEtna did not provide her with documents she requested. ERISA requires an administrator "upon written request of any participant or beneficiary, [to] furnish a copy of the latest updated summary plan description, plan description ... contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 1132(c)(1) provides:

Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up

to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

The district court assessed no penalties against Grace and AEtna, because Grace sent the handbook and the general provisions of the Plan relating to custodial care to Mrs. Glocker within 30 days of her request. The court believed other material that Grace sent late, only after repeated requests, was inapplicable or duplicative. The court also found that Mrs. Glocker had not proven substantive harm as a result of the nondisclosure.

■ We review the district court's decision not to impose penalties for abuse of discretion. *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 847–48 (11th Cir.1990); *Harrold v. Coble*, 380 F.2d 18, 19 (4th Cir.1967). The district court's refusal to award damages was premised on the court's reliance on the handbook. Not until Mrs. Glocker received the entire Plan, long after it should have been furnished, was she able to establish that *de novo* review was appropriate. Consequently, the district court should reconsider the claim for penalties in light of Mrs. Glocker's need for the entire Plan to rebut Grace's reliance on the handbook and the expenses for legal services that she incurred in her efforts to obtain pertinent documents.

### IV

■ Mrs. Glocker asserts that New York law, and not ERISA, applies to her claim, because the contract between AEtna and Grace specifies that it be "construed and enforced according to the laws of the State of New York." She insists that Mr. Glocker was a third-party beneficiary of this contract. Her preference for New York law arises out of her view that it accords favorable evidentiary weight to a physician's recommendation for private-duty nurses when a claim is made for reimbursement for the costs of this service under a health care plan.

Mrs. Glocker's position on this issue lacks merit. Mr. Glocker was neither a party to nor a beneficiary of the AEtna–Grace contract. As this contract plainly stipulates, AEtna was merely an agent of Grace for administrative and operational services. The district court carefully examined Mrs. Glocker's claim for choice of New York law and properly rejected it. We affirm this aspect of the case for reasons adequately stated by the district court.

## V

The judgment is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.