**Melinda W. PORCARO and Lauren Porcaro, by Melinda W. PORCARO, Her Next Friend**

**v.**

**The COLONIAL LIFE INSURANCE COMPANY OF AMERICA; Virginia Financial and Insurance Services, Inc.; Berlin Imports, Ltd.; Ed Berlin; Ron Wood.**

**Civ. A. No. 90–0009–C.**

United States District Court, W.D. Virginia.

Jan. 7, 1993.

L.B. Chandler, Jr., Richard A. Diamond, Chandler, Franklin & O'Bryan, Charlottesville, VA, for plaintiffs.

John W. Zunka, Richard H. Barrick, Taylor & Zunka, Ltd., Charlottesville, VA, W. Fain Rutherford, John S. Edwards, Roanoke, VA, defendants.

## ORDER

MICHAEL, District Judge.

Pursuant to a standing order entered on June 26, 1992, this court referred this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his Report and Recommendation on December 9, 1992. On December 28, 1992, defendant Colonial Life Insurance Company of America filed objections to the Report and Recommendation. Said objections having been lodged with this court in a timely and appropriate manner, this court is required to undertake a *de novo* determination. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir. 1982).

Defendant Colonial Life generally objects to the proposed conclusions of law contained in the Magistrate Judge's Report and Recommendation. In addition to making such general objections, defendant Colonial Life specifically objects to the Magistrate Judge's proposed finding of fact contained in the third sentence of the paragraph beginning on page two of the Report and Recommendation: "[Melinda Porcaro] received the information requested, but never was informed that automatic coverage for her newborn might or would be contingent on her husband's coverage under the policy." Regardless of whether this fact is supported by the record, the court finds that this fact is not material to the issue of coverage in this case. Thus, the court does not adopt the above-quoted sentence.

After *de novo* review of the entire record including specifically review of the tape of the proceedings before the Magistrate Judge, this court determines that defendant Colonial Life's general objections are without merit. Accordingly, it is this day

### ADJUDGED AND ORDERED

as follows:

1. The general objections to the Report and Recommendation of the United States Magistrate Judge are overruled, and said Report and Recommendation, filed December 9, 1992, shall be, and it hereby is, adopted in its entirety, except for the third sentence of the paragraph beginning on page two thereof.

2. For the reasons stated in the Magistrate Judge's Report and Recommendation, plaintiffs' motion for partial summary judgment on the issue of coverage shall be, and it hereby is, granted.

3. The plaintiffs shall have twenty days from entry of this Order to waive their rights to a jury trial on the issue of damages.

4. Absent waiver of a jury trial, the issue of damages shall be tried before a seven-member jury on March 2 and 3, 1993, at the United States District Court in Charlottesville, Virginia, with the proceedings to commence at 10:00 a.m.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record and to Magistrate Judge Crigler.

## REPORT AND RECOMMENDATION

CRIGLER, United States Magistrate Judge.

Before the court is the plaintiffs' motion for summary judgment, this action under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA) having been referred to this court to con-

duct proceedings and to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. On November 12, 1992, the parties, by respective counsel, presented argument after which the court announced its findings and conclusions with the reservation that they would be reduced to writing and that this Report and Recommendation would prevail in the event of inconsistencies between the spoken and written word.

## FACTS

The material facts relating to coverage are not in dispute.[1] Plaintiff, Melinda Porcaro, at all relevant times, was an employee of Berlin Imports Ltd. (Berlin) which offered to its employees a group health policy qualifying under ERISA. Initially, the policy, or plan, was offered through Blue Cross/Blue Shield of Virginia. In October, 1986, plaintiff married Enrique Pocaro but elected not to add him to the policy, maintaining her single coverage. In November, 1986, Berlin changed carriers to Colonial Life Insurance Company of North America (Colonial), and once again, plaintiff did not elect to cover her spouse, maintaining her single coverage.

In August, 1987, plaintiff learned she was pregnant with her first child to whom she gave birth on December 27, 1987.[2] Between the date she learned she was pregnant and the date of delivery, plaintiff sought from the plan's administrator information regarding coverage of her newborn. She received the information requested, but never was informed that automatic coverage for her newborn might or would be contingent on her husband's coverage under the policy. The birth was premature, and as a result significant expenses related

thereto were incurred. Within thirty-one (31) days of the delivery, as informed by the plan administrator, plaintiff requested in writing to convert her single coverage to dependent coverage. At the same time, she requested that her husband be added because he no longer was covered through his work, and because the premium for covering the entire family was the same as that for covering plaintiff and her child.

Just before the baby's birth, Berlin once again chose to change carriers for its employee group health coverage. It elected a self-insured plan. Premiums for the period were not paid by Berlin to Colonial at that time. However, when Berlin learned of the plaintiff's situation, it paid the premium within the grace period.[3] Plaintiff submitted a change of status form which was processed by Colonial. When the claim for the child's birth-related expenses was made with Colonial, however, this defendant denied the claim on the basis that the child was not insurable at the time.[4] In an expression of largess, however, Colonial did extend coverage to plaintiff's husband, who had no claim pending and offered coverage to the child as a dependent after a year's waiting period had expired. This action ensued.

## THE POLICY

Under Section A, dependents, including a spouse as well as natural or adopted children of an employee, were "eligible to be enrolled under the policy." Section A, at A1A. The effective date of the policy, as it pertains to the enrollment of a spouse or other dependent, however, turned on whether proof of the dependent's insurability was required. Section C, at C1E. If proof of insurability for dependents was

---

1. The facts related to whether all expenses claimed by the plaintiffs were related to the premature birth of the child have not been developed fully by the parties. To that extent it appears, and the parties concede, there are material issues of fact.

2. Plaintiff had no other children, either natural or adopted, at the time.

3. The defense of nonpayment of premium has not been raised in this case.

4. The court has noted that there remains a dispute over whether all the expenses claimed were related to the child's premature birth. For purposes of determining the question of coverage, and thus liability, it will be assumed that all the expenses are so related. How the court should deal with the issue of damages will be addressed *infra*.

not required, the effective date of the policy was when "... your dependents are first eligible, if you apply in writing for dependent coverage within 31 days of acquiring your first dependent." *Id.* Proof of insurability was required for dependents when "... you apply for dependent insurance more than 31 days after the date you first have an eligible dependent." *Id.* In the event proof of insurability was required, insurance would not take effect "until we notify you in writing that you are insured." *Id.*

Section W of the Policy sets forth the "GENERAL MEDICAL/DENTAL PROVISIONS ADDITIONAL EXCLUSIONS AND LIMITATIONS." Section W, at W1K–W6K. Pertinent to this action, the policy specifically provided coverage for "Pregnancy and Newborn Child Care" as follows:

> The mother's covered expenses that result from a pregnancy will be paid the same as an accident or sickness.
>
> For a newborn child, expenses resulting from:
>
> a. illness;
>
> b. injury;
>
> c. premature birth;
>
> d. congenital defect; or
>
> e. birth abnormality;
>
> are included.
>
> There are no benefits for other nursery charges or pediatric care.

Section W, at W3K.[5]

Finally, the court observes, and the parties have not disputed, that the policy does not reserve to its administrators the authority to determine eligibility for benefits or to interpret the language of the policy. Simply put, the plan is silent on these matters.

## CONTENTIONS OF THE PARTIES

In support of summary judgment, plaintiffs offer three contentions. First, they say the court should make *de novo* determination of whether there is coverage. Second, they suggest that the court should read the policy as a whole, apply ordinary definitions to terms in the policy and construe any ambiguous language against the scrivener of the document. Third, they argue that when these are done, it is clear that the policy does not require proof of insurability for the instant child to have been covered for all expenses related to her premature birth, and that the insurability of the employee's husband or the fact that he was a late entrant on the employee's coverage should not be an impediment to coverage for the expenses claimed in this case.

Not surprisingly, the other defendants in this action support plaintiffs' motion. Virginia Financial and Insurance Services, Inc. (Virginia Financial) believes that the court should review the denial by Colonial *de novo*, that the court should construe any ambiguity in the policy against Colonial as the drafter of the policy and that the court should find policy specifically to provide, under its "PREGNANCY COVERAGE," for expenses arising as a result of the premature birth of the infant in this case.[6] Defendant Wood concurs in these arguments, but rests his defense principally upon the contention that the policy specifically covers the expenses claimed here because the employee applied for benefits within 31 days of giving birth to the dependent child. Wood orally argued that Colonial's interpretation of the policy that Mrs. Porcaro was required to have added her husband within 31 days of marriage or risk subjecting all children born of the marriage to proof of insurability from birth is, at best, a strained and unnatural, if not ab-

---

5. This provision was duplicated in the "PREGNANCY COVERAGE" of Section W, leaving little doubt as to the intent of the policy regarding the benefits payable under either the general or specific pregnancy provisions of the policy. *Id., at FM2A.*

6. Virginia Financial also argues that coverage is mandated under *Va.Code* § 38.2–3411. This raises the difficult issue of whether ERISA has preempted Virginia law in this regard. As there are adequate alternate grounds under ERISA to decide this case, the court sees no need to grab hold of this tar baby.

surd, interpretation of the policy. Wood urges the court not to countenance it.

Colonial urges the court to review its interpretation of the policy under the arbitrary and capricious standard, but it suggests that even under the *de novo* standard, the policy allows for automatic coverage of a subsequent dependent only if the insured (Mrs. Porcaro) applied for dependent coverage for her husband within 31 days after their marriage. Because Mr. Porcaro was not added until long after he and plaintiff were married, Colonial says that all subsequent dependents are required to have provided proof of insurability before any claim would be covered.

## APPLICABLE LAW, FINDINGS AND CONCLUSIONS

■ Initially, the court must determine the proper standard of review. Notwithstanding Colonial's strained attempt to argue otherwise, the court finds that the policy in question reserved no rights in the policy's administrators or fiduciaries to interpret it. Therefore, the court will review Colonial's interpretation *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210 (4th Cir. 1990) (*de novo* standard applies where nothing in the policy grants the health insurance company discretionary authority).

■ Next, the court must ascertain the applicable rules of construction. In doing so, the court is mindful of the admonition in this Circuit that "[t]he judicial role is not to rewrite plan provisions, but to assure that they are fairly administered." *PPG Industries Pension Plan A (CIO) v. Crews*, 902 F.2d 1148, 1152 (4th Cir.1990) (quoting *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1078 (4th Cir.1989)). In addition, every effort will be made to avoid importing principles of state common law, recognizing, however, that it is difficult not to apply traditional, axiomatic concepts of general contract law when interpreting a plan or policy of insurance under ERISA. *See Singer v. Black & Decker*, 964 F.2d 1449, 1453–54 (4th Cir.1992) (Wilkinson, J. concurring).

■ In *Glocker v. W.R. Grace & Co.*, 974 F.2d 540 (4th Cir.1992), the Fourth Circuit recently applied generally accepted traditional concepts of contract law and remanded an ERISA action to the trial court for a *de novo* review as required by *Firestone*, instructing the district court to construe the terms of the policy as follows:

> [The court] .. should interpret the Plan in accordance with the principles of contract law. The primary effort should be to ascertain the intent of the parties, or the settlor if the Plan was not negotiated. *Alleged ambiguities should be reconciled, if possible, by giving language its ordinary meaning* and, if necessary, by admitting relevant, extrinsic evidence. *If ambiguities remain, the Plan should be construed against the drafter*, in this case Grace, which apparently relied on its agent Aetna, to prepare the Plan.

974 F.2d at 544 (emphasis added).

Accordingly, it seems as though this court must read the policy as a whole to give the language of the policy its ordinary meaning, but if there be an ambiguity, such ambiguity should be construed against the drafter of the policy, here Colonial.

■ The conflict between Colonial and the plaintiffs centers on their interpretation of Sections A and C of the policy. Colonial Life presses the court to interpret the language "first eligible" and "you first have an eligible dependent" in Section C to mean that in order for every subsequent dependent of an insured to be eligible for coverage without proof of insurability, the insured must apply for coverage of the first eligible dependent within 31 days after that person becomes a dependent. Plaintiffs and the other defendants say that these provisions should be interpreted to mean that an insured has 31 days after any dependent first becomes eligible to be claimed as a dependent within which to apply for coverage, and that if this is done, coverage automatically extends to that dependent without the necessity of having to prove insurability. Either construction requires

the court to find an ambiguity in the written policy because the language of the policy would allow for neither construction without interpretation. In such a case, *Glocker* would counsel the court to construe the ambiguity against Colonial Life, which would lead to the result sought by the plaintiffs. However, even if the court were inclined to construe these provisions of the policy as extant decisional authority counsels, such is not necessary to resolve the issue of coverage in this action. There is an alternate, much more substantial and less problematic resolution that appears on the undisputed facts in this action.

Section A of the policy not only sets forth the categories or classes of dependents, it also specially addresses one category of dependent for purposes of becoming insured. The policy states, "To become insured, dependents, **other than a newborn child,** must not be confined in a hospital or nursing facility." Section C, at C1E. (Emphasis added) When that provision is read in conjunction with the policy's general and specific pregnancy coverage under Section W, there is no question in the court's mind that the policy intended to extend coverage of benefits to a class of newborn children for "expenses resulting from", among other things, "premature birth." This coverage is part of the coverage extended to the insured mother, is to be treated as accident or sickness insurance, and it excludes only the costs of pediatric care.

■ This court is of the opinion, therefore, that neither it nor the presiding District Judge needs to resolve the ambiguity concerning extension of coverage to a subsequent dependent without proof of insurability when more than 31 days has elapsed for adding a prior dependent. Instead, based on the clear, unambiguous language of Colonial's pregnancy coverage, plaintiff would be entitled to coverage on the "newborn child" for all "expenses resulting from ... premature birth" except "pediatric care".[7]

The only remaining issue, therefore, is whether judgment can completely enter on behalf of the plaintiffs. It cannot because, by concession of the parties, there exist material issues of fact regarding the extent to which all the amounts claimed by the plaintiffs result from the premature birth of the child. On the merits of these issues, there must be further proceedings, possibly even a trial.

## SUMMARY

For the reasons set forth above, it is

## RECOMMENDED

that an order enter granting partial summary judgement to the plaintiffs on the question of coverage for all expenses resulting from the premature birth of Lauren Porcaro, denying summary judgment as to the amount and taking such further action as the presiding court might deem appropriate for the resolution of the amount owed to the plaintiffs by Colonial.[8]

The Clerk is directed to immediately transmit the record in this case to the Hon. James H. Michael, Jr., United States District Judge. Both sides are reminded that

---

7. Should the presiding court or any reviewing court need to address an interpretation of the ambiguous language of the policy, the court here would construe the policy against Colonial Life and find that it covers subsequent dependents without prior proof of insurability so long as the application for coverage was made within 31 days of marriage, the birth of a child, the adoption of a child or the acquisition of foster or step children by the insured. Since Mrs. Porcaro complied with the application requirements for her child, the fact that she had not applied for coverage on her husband within 31 days of marriage would not affect coverage on the child. Frankly, it is difficult for the court to imagine Colonial arguing a different construction with a straight face, for the effect of Colonial's interpretation would be to deprive the insured of any meaningful election as to whether any dependent would be covered since if the election was not made for the first one, all subsequent dependents would confront the requirement of proof of insurability.

8. It is noted that plaintiffs demanded in their Third Amended Complaint a trial by jury. Absent waiver of that right, the presiding court should proceed to set the case for trial. Should the parties waive a jury trial, the court could recommit the case to this court to conduct appropriate proceedings and to render a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

**182**

pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

December 9, 1992.