993 F.2d 1536
 16 Employee Benefits Cas. 2353
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carroll T. GIVENS, Plaintiff-Appellant,
v.
AMERICAN BENEFIT CORPORATION; Association of Community
Mental Health/Retardation Programs of West
Virginia Benefit Plan, Defendants-Appellees,
and
DURHAM LIFE INSURANCE COMPANY; Mutual Benefit Life
Insurance Company; Richard Kiley; Martin Garino; David
McWatters; Don Wood, as a Trustee of the Association of
Community Mental Health/Mental Retardation Programs of West
Virginia Benefit Plan, Defendants.
 No. 92-2005.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: April 21, 1993
May 17, 1993
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CA-90-121)
 Robert B. Sayre, The Sayre Law Offices, L.C., Beckley, West Virginia; Thomas C. Cady, Morgantown, West Virginia, for Appellant.
 R. Terrance Rodgers, John J. Polak, King, Betts & Allen, Charleston, West Virginia; Lafe C. Chafin, Barrett, Chafin & Lowry, Huntington, West Virginia, for Appellees.
 S.D.W.Va.
 AFFIRMED.
 OPINION
 Before PHILLIPS, WILKINS, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Carroll T. Givens, a resident of West Virginia, appeals the district court's dismissal with prejudice of his civil action under the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (1988), to recover approximately $57,000 in medical expenses for his stepson's substance abuse treatments. We affirm because the district court did not err in finding that one of the Defendants was not an ERISA fiduciary and because Givens's stepson did not meet the eligibility requirements of the Benefit Plan.
 
 
 2
 Givens filed this action against the American Benefit Corporation ("ABC") and other Defendants in state court. The Association of Community Mental Health/Retardation Programs of West Virginia Benefit Plan ("the Benefit Plan") was added as a Defendant when the case was removed to the federal district court and the other Defendants, with the exception of ABC, were dismissed from the suit.
 
 I.
 
 3
 The parties stipulated to the following facts:
 
 
 4
 (1) The Benefit Plan is an "employee welfare benefit plan" as defined in 29 U.S.C.A. § 1002(1) (West Supp. 1992), has been in effect since July 1980, and has operated as a self-funded multiemployer plan since August 1981. While the Plan is directly administered by its Trustees, since July 1986 ABC has provided third-party administrative services to the Plan and has a contract to provide monthly billings, claims payments, and actuarial consultation. ABC makes the initial determination on claims with a right of appeal to the Trustees.
 
 
 5
 (2) Coverage for eligible dependents changed, effective April 15, 1988. The amendment, which appeared in a plan booklet, told readers that dependents included legal spouses, unmarried children under nineteen years of age, and unmarried children under twenty-three years of age who were attending school full-time and principally dependent on the plan participant for maintenance and support. Stepchildren were specifically included provided (1) the child lived with the plan participant in a "regular parent-child relationship" and (2) was "principally dependent" on the plan participant for maintenance and support.
 
 
 6
 (3) Givens was an employee of the Fayette, Monroe, Raleigh & Summers Mental Health Council, Inc. ("FMRS") since 1972 and, therefore, had been covered by the Benefit Plan since 1980. Givens paid a single premium for dependent coverage, regardless of the number of dependents he listed. In November 1986, Givens married Billie June Garten ("Billie") and enrolled her as a covered dependent. She had two children by a previous marriage, including Greg Garten ("Greg"), the stepchild at issue in this lawsuit. The state court divorce decree awarded Billie custody of the children, provided that her estranged husband, Harold Garten ("Garten"), pay $150 per month per child in support until the child reached majority or completed college, and that Garten was responsible for reasonable and necessary medical, dental, and professional expenses incurred by the minor children.
 
 
 7
 (4) Greg was hospitalized at the Olympic Center in Preston County continuously from October 8, 1986, to December 14, 1986, because of drinking and drug use incidents. A discharge summary stated Greg's prognosis for recovery was "guarded at best." Then again from May 15, 1987, until July 2, 1987, Greg was hospitalized at the Charleston Area Medical Center in Charleston for alcohol and drug abuse. In July 1987, Greg returned to live with Garten, his natural father, but between June 10, 1988, and June 16, 1988, Greg stayed at Givens's residence until Givens and Billie admitted Greg to the Roanoke Valley Psychiatric Center, where he remained until August 1, 1988. Upon Greg's discharge, Givens and Billie took Greg to a treatment facility in Wisconsin where he remained until December 28, 1988.
 
 
 8
 (5) Givens spoke by phone with an ABC employee on June 14 and June 15, 1988, about whether his stepson was covered by the Benefit Plan, but did not provide ABC with any details concerning Greg's living arrangements or previous treatments for substance abuse. The employee read Givens the eligibility provision from the booklet, which Givens also read after the phone conversation. In July 1988, Givens filled out an enrollment card at FMRS and an"Evidence of Insurability" form for Greg. In a series of letters during the autumn of 1988, ABC officials informed Givens and medical providers that ABC was denying the application because ABC did not consider Greg a covered dependent. Givens appeared on his own behalf to argue his appeal before the Trustees. They ultimately denied coverage because, though Greg was not yet nineteen years of age, it did not appear to the Trustees that Greg was principally dependent on Givens for maintenance and support at the time the expenses were incurred or that Greg was living with Givens in a regular parent-child relationship.
 
 II.
 
 9
 The district court denied the Defendants' joint motion for summary judgment and conducted a de novo review of only that evidence before the Trustees at the time that the Trustees denied Givens's appeal. At the time of trial, the district court found in favor of the Defendants and dismissed the action. Givens timely appealed.
 
 
 10
 The district court dismissed Givens's action after making findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). This Court will only disturb those findings of fact if they are clearly erroneous. Reinking v. Philadelphia Am. Life Ins. Co., 910 F.2d 1210, 1215 (4th Cir. 1990). The district court's legal conclusions are reviewed de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (denial of benefits under § 1132(a)(1)(B) reviewed under de novo standard unless fiduciary given discretionary authority to determine eligibility or construe terms); Quesinberry v. Life Ins. Co., F.2d, No. 92-1100, slip op. at 6 (4th Cir. Feb. 12, 1993) (in banc); De Nobel v. Vitro Corp., 885 F.2d 1180, 1185-86 (4th Cir. 1989).
 
 III.
 
 11
 Givens first claims that ABC was a fiduciary under ERISA. This Court has ruled that determining whether one was acting as a fiduciary under ERISA depends on whether the person was acting as a fiduciary "with respect to the particular activity at issue." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61-62 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3498 (U.S. 1993).
 
 
 12
 The statute defines a fiduciary of an ERISA plan as a person who exercises any discretionary authority or control over the management of the benefit plan or the management or disposition of its assets, a paid investment advisor, or a person with any discretionary authority or responsibility in administering a benefit plan covered by the Act. 29 U.S.C.A. § 1002(21)(A) (West Supp. 1992). Givens argues that ABC qualifies as a fiduciary because ABC officials made initial eligibility decisions, controlled the Benefit Plan, advised and manipulated the Trustees, and initially approved Greg for coverage before reversing their decision. The district court found that ABC officials who spoke and corresponded with Givens performed only ministerial functions under its contract with the Benefit Plan and that ABC was not a fiduciary.
 
 
 13
 The Sixth and Eleventh Circuits have held that persons performing ministerial tasks, such as applying plan rules and processing claims, are not fiduciaries for purposes of ERISA. Baxter v. C.A. Muer Corp., 941 F.2d 451, 455-56 (6th Cir. 1991) (claims processor who paid claims according to terms of plan not fiduciary); Baker v. Big Star Div. of Grand Union Co., 893 F.2d 288, 290-91 (11th Cir. 1989) (insurance company not fiduciary when simply hired to review claims and determine amounts payable under plan). The activity at issue was the determination whether Greg was eligible under the Benefit Plan. The parties stipulated that ABC provided third-party administrative services to the Benefit Plan, that the Plan is administered directly by its Trustees, and that ABC and the Plan have a contract for ABC to perform monthly billings, claims payments, and actuarial consultation. Further, it was stipulated that while claims are submitted to ABC for initial decision, disappointed beneficiaries have a right of appeal to the Trustees. There is no support in the record for Givens's argument on appeal that ABC initially found that Greg was eligible, then changed its decision.
 
 
 14
 By its contract with the Benefit Plan, ABC handled the initial processing of claims, but final decisions and appeals were in the hands of the Benefit Plan's Trustees. We hold that the district court did not err in finding that ABC was not acting as a fiduciary.
 
 IV.
 
 15
 Givens also argues that the district court erred in concluding that Greg was not a covered dependent. Denial of benefits in this ERISA case is reviewed de novo. See Firestone Tire, 489 U.S. at 115. The Benefit Plan required Greg to meet three conditions to be eligible as a stepson. He must have been: (1) unmarried and younger than 19; (2) living with a plan participant in a regular child-parent relationship; and (3) principally dependent on the plan participant for maintenance and support. Alleged ambiguities in employee welfare benefit plans should be reconciled by giving language its ordinary meaning; admitting extrinsic evidence is permissible when necessary and relevant. Glocker v. W.R. Grace & Co., 974 F.2d 540, 544 (4th Cir. 1992).
 
 
 16
 The district court found that the second requirement meant that "the stepchild must physically live under the same roof as the plan participant on virtually a daily basis as most parents and children commonly do." In addition, the district court found that the third requirement plainly meant that "the stepchild must primarily rely on the plan participant for basic everyday needs." Though Givens goes to some length in his brief to fashion a new definition of a parent-child relationship, the stipulated record clearly shows that Greg only lived with Givens for one week in June 1988. Givens does not attempt on appeal to argue that Greg was principally dependent on Givens, and the state court divorce decree strongly suggests that Givens could not make such a showing. We hold that the district court's interpretation of these two requirements was not unreasonable and that the record shows that Greg Givens was not eligible as a stepson under the terms of the Benefit Plan.
 
 
 17
 Therefore, we affirm the district court's dismissal of Givens's ERISA action. We grant Givens's motion to submit the case on the briefs and dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED