**Rose Marie HOSPODOR, Executor,**

v.

**ARINC, INC.**

**Civil No. Y–95–2651.**

United States District Court, D. Maryland.

March 6, 1997.

Jeffrey G. Gilmore, Shannon J. Briglia, and Wickwire Gavin, P.C., Vienna, VA, for Plaintiff.

Samuel D. Walker, Nancy M. Barnes, and Wiley, Rein & Fielding, Washington, DC, for Defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

At issue in this case are the benefits due to Andrew T. Hospodor ("Hospodor") from AR-

INC, Inc. ("ARINC") under an Employment Agreement ("EA"), a Supplemental Retirement Benefit Agreement ("SRB"), and Retirement Income Plan ("Qualified Plan"). A two-day non-jury trial was held November 25–26, 1996. Post–Trial Briefs were filed by the parties in lieu of closing arguments. The findings of fact and conclusions of law as stated herein are in accordance with the provisions of Federal Rule of Civil Procedure 52(a) whether or not so stated.

## I.

Hospodor served as Chief Executive Officer ("CEO") and Chairman of the Board of ARINC beginning on August 3, 1987. Hospodor and ARINC entered into the SRB on June 2, 1992 and the EA on March 7, 1994. In July 1994, Hospodor was diagnosed with brain cancer and began receiving treatment which prevented him from physically returning to work on a daily basis although he continued to perform some of his duties through the fall of 1994.

As the seriousness of Hospodor's condition became apparent, ARINC's Board began evaluating his future relationship with the company. On September 27, 1994, ARINC's Board voted to give notice of its intention not to extend his contract, which was required under the EA by October 1 to avoid additional financial obligations. On November 11, 1994, the Board voted to terminate Hospodor's employment as CEO of ARINC. On November 17, 1994, ARINC sent a letter to Hospodor's counsel advising her of the Board's decision to terminate Hospodor effective upon receipt of the letter, which occurred November 18, 1994. On November 21, 1994, ARINC tendered four checks totaling $1,806,961.60 less taxes and other undisputed withholdings to Hospodor as a complete accord and satisfaction. After Hospodor objected to the accord and satisfaction condition, it was lifted on December 29, 1994 and the checks were deposited on March 7, 1995, the day Hospodor died, and cleared March 9, 1995.

Rose Marie Hospodor, the Executor of Andrew Hospodor's will (the "Estate"), filed suit in the Circuit Court of Anne Arundel County alleging breach of contract for the nonpayment of benefits and intentional infliction of emotional distress suffered by Hospodor when ARINC terminated him. ARINC timely removed the case to this Court. By Order dated January 11, 1996, the Court denied the Estate's Motion to Remand and granted ARINC's Motion to Strike the Jury Demand, because the Employee Retirement Income Security Act of 1974 ("ERISA") preempted the breach of contract claim and does not provide for a jury trial. The Court also dismissed the intentional infliction of emotional distress claim and later refused to grant leave to amend the Complaint to re-plead the intentional infliction of emotional distress claim, holding that the claim was legally insufficient under Maryland law because ARNIC's conduct was not "extreme and outrageous." On October 23, 1996, the Court denied ARINC's Motion for Summary Judgment, indicating that factual issues remained for trial.

Prior to trial, the Court denied ARINC's Motion to Exclude Trial Testimony and Expert Report of Lorraine Bergstresser, indicating that the dispute over whether Plaintiff's expert could testify as to certain matters was an evidentiary question that must await trial. The Court also denied ARINC's Motion to Quash and, Alternatively, *In Limine*, holding that any decision as to the relevancy of the testimony of ARINC's current Chairman and CEO, James Pierce, should await trial. The Court also granted ARINC's Motion to Strike the Estate's Untimely Designation of a New Expert Witness.

The Plaintiff seeks damages of $992,300 plus additional interest and attorneys' fees.[1] Six aspects of the benefits calculation have been challenged; each will be addressed below.

## II.

Under ERISA, the Court must review the denial of benefits under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or

---

1. The parties agreed to defer any consideration of attorney's fees until after the trial.

to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). If an administrator has discretionary authority, the Court must review under the abuse of discretion standard. *Doe v. Group Hospitalization & Medical Servs.*, 3 F.3d 80, 85 (4th Cir.1993).

The parties agree that the SRB and EA do not provide an administrator with discretionary authority and are subject to *de novo* review. While the Qualified Plan provides the administrator with discretion to determine eligibility and amount of benefits, no dispute exists as to the calculation of benefits under the Qualified Plan. Accordingly, the Court reviews the challenged aspects of ARINC's calculation of benefits *de novo*.

### III.

**1. *"Age at Retirement" under SRB ¶ I.1.1***

■ SRB ¶ I.1.1 provides a table for determining the "Applicable Percentage" to use in calculating the SRB based on the "Age at Retirement." The percentage used in calculating the SRB increases with age, thereby increasing the benefit under the SRB. The parties disagree over whether "Age at Retirement" should be attained age, age rounded to the nearest birthday, or prorated age. ARINC used Hospodor's attained age of 57.

The Estate seeks $206,387, claiming Hospodor's "Age at Retirement" should be 58, his age rounded to the nearest birthday, because in November 1994 when he was terminated he was 57 and 10 months. Alternatively, the Estate seeks $172,282, claiming Hospodor's age should be prorated by months to 57 and 10 months.

Because the SRB does not define the term "age," the Court is required to give it "its ordinary meaning." *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir.1992). The Court finds that the ordinary meaning of the term age absent specific language to the contrary is attained age.[2] Accordingly, ARINC's use of Hospodor's attained age of 57 was proper.

**2. *Proper Figure for "Target Bonus Amount" under EA***

■ The EA ¶ 2.13 defines the "Target Bonus Amount" in pertinent part as follows:

> For purposes of this [Employment] Agreement, "Target Bonus Amount" shall mean the greater of (a) the most recent Bonus paid or payable to the Executive prior to his Termination date ... or (c) the average of the Bonuses paid or payable during the three (3) full fiscal years ended immediately prior to the Termination Date. . . .

The EA requires ARINC to use the "Target Bonus Amount" to calculate Hospodor's benefits under EA ¶ 7.1(b)(iv). The EA also requires ARINC to pay a "Pro Rata Target Bonus"[3] using the "Target Bonus Amount." EA ¶ 7.1(b)(i).

The parties disagree over the figure to be used to set the "Target Bonus Amount" under method (a) in EA ¶ 2.13 above. ARINC awarded Hospodor a bonus of $75,000 in 1993, the last full year he worked. In April 1994, ARINC's Board approved a 1994 Officer Incentive Compensation Plan ("OICP") which set as an incentive a "target bonus"[4] for Hospodor of 45% of his base salary of $257,500 or $115,875. ARINC used Hospodor's 1993 bonus of $75,000 as the "Target Bonus Amount."

The Estate seeks $188,139 claiming that the "Target Bonus Amount" should have been the $115,875 "target bonus" figure used

---

**2.** If asked for one's "age," one normally responds with attained age unless the person asking specifically requests a more specific response.

**3.** The Pro Rata Target Bonus is defined as follows:

> [F]or the fiscal year in which the Executive's Termination Date occurs, an amount equal to the "Target Bonus Amount" as (hereinafter defined) multiplied by a fraction the numerator of which is the number of days in the fiscal year through the termination date and the denominator of which is 365.
> EA ¶ 2.10.

**4.** It is essential to distinguish between "Target Bonus Amount," "Pro Rata Target Bonus," and "target bonus." "Target Bonus Amount" is defined in EA ¶ 2.13. "Pro Rate Target Bonus" is defined in EA ¶ 2.10. The "target bonus" is an amount established by the Board at the beginning of the year in the OICP as an incentive.

in the OICP. Additionally, the Estate claims that Hospodor was entitled to a bonus for 1994 of $115,875.

The Court finds that $75,000, Hospodor's bonus for 1993, was the proper figure to use for the "Target Bonus Amount." The "paid or payable prior to his Termination" language of EA ¶ 2.13 was designed to avoid this type of dispute over the amount of a bonus not yet awarded. Moreover, the "target bonus" of $115,875 in the OICP was simply an incentive goal and was never a legally enforceable obligation. Accordingly, no change in benefits is required.

### 3. Timing of Benefits under EA ¶ 7.1(b)(iv)

■ EA ¶ 7.1(b)(iv) provides in pertinent part:

[T]he Company shall pay to the Executive in a single payment an amount in cash equal to the excess of (A) the actuarial equivalent of the aggregate retirement benefit the Executive would have been entitled to receive under the Company's supplemental and other retirement plans including, but not limited to, ARINC['s Qualified Plan] and the [SRB] ... had ... the Executive remained employed by the Company for an additional three (3) complete years of credited service ....

The parties disagree over when the benefits under EA 7.1(b)(iv), sometimes referred to as the "Enhanced SRB," should be considered payable for purposes of calculating an actuarial equivalent. ARINC assumed the benefits were payable at the end of the additional three years.

The Estate seeks $171,650 claiming that the benefits should have been considered payable immediately in calculating the actuarial equivalent. The Estate argues that because benefits under the SRB and the Qualified Plan commence immediately, benefits under EA ¶ 7.1(b)(iv) should also begin immediately. The Estate also relies on the fact that the benefits under EA 7.1(b)(iv) are part of a "golden parachute" arrangement.

The Court finds that the method of calculation used by ARINC is consistent with the purpose of EA ¶ 7.1(b). The Enhanced SRB was designed to treat Hospodor as if he continued working for three more years for purposes of salary, insurance, and pension benefits. If Hospodor had "remained employed by the Company for an additional three (3) complete years of credited service," he certainly would not have been entitled to full compensation at the beginning of the three year period. Accordingly, ARINC properly calculated the benefit owed to Hospodor under EA 7.1(b)(iv).

### 4. Calculation of Actuarial Equivalent under EA ¶ 7.1(b)(iv)

■ EA ¶ 7.1(b) provided for Hospodor to receive certain benefits if ARINC terminated his employment other than for death, cause or disability. In pertinent part, EA ¶ 7.1(b)(iv) provides:

... the "actuarial equivalent" shall be determined in accordance with the actuarial assumptions used for the calculation of benefits under each Pension Plan as applied immediately prior to the Termination date in accordance with each such plan's past practices.

In determining the lump-sum benefits owed to Hospodor, ARINC was required to calculate the actuarial equivalent or net present value of the benefits. The parties disagree over whether a stream of monthly payments should be taken into account in calculating the actuarial equivalent at the beginning or end of any given year. ARINC considered all twelve monthly payments to have been received at the end of any given year under a life expectancy methodology.

The Estate seeks $126,114 claiming that all twelve monthly payments should have been considered received at the beginning of any given year under a life expectancy methodology. The Estate relies alternatively on a provision of the SRB and the rule of *contra proferentum.*[5]

---

5. The rule of *contra proferentum* is inapplicable in the present situation because the evidence shows that Hospodor actively negotiated the EA.

*Doe v. Group Hospitalization & Medical Servs.,* 3 F.3d 80, 89 (4th Cir.1993).

Expert actuaries for both parties testified that the generally accepted practice for calculating an actuarial equivalent is to use a "life contingency" methodology, which takes into account the payments on a monthly basis and the probability of death. If such a life contingency method had been used, then ARINC overpaid by $64,471. However, neither ARINC nor the Estate has challenged the use of the life expectancy methodology, and it will not be utilized under the facts of this case.

Considering the generous nature of the benefit provided under the methodology used by ARINC, the Estate has proffered scant evidence for using its even more generous methodology. Accordingly, the Court finds that the Estate is not entitled to any additional benefits based on the methodology used by ARINC to calculate the actuarial equivalent under EA ¶ 7.1(b)(iv).

### 5. *Termination Date for Setting Discount Rate*

■ In calculating the benefits owed Hospodor, there were two streams of future payments that required ARINC to apply a discount rate: (a) the benefits under the SRB and (b) the benefits under EA ¶ 7.1(b)(iv).

> SRB ¶ III.3.1.1 provides in pertinent part: The [SRB] due under this Agreement shall be paid ... in any one of the following methods: ... (3) A single lump-sum payment equal to the present value of the monthly payments discounted at the then-prevailing prime interest rate charged by the Company's Banks.

This provision requires ARINC to apply a discount rate equivalent to the prime rate at the time of payment. It is undisputed that ARINC issued checks in payment of its obligations to Hospodor on November 21, 1994, when the prime rate was 8.5%. Accordingly, the Court finds that ARINC properly used a discount rate of 8.5% in calculating the present value of the benefits under the SRB.

■ EA ¶ 7.1(b)(iv) provides in pertinent part:

> ... the "actuarial equivalent" shall be determined in accordance with the actuarial assumptions used for the calculation of benefits under each Pension Plan as applied immediately prior to the Termination date in accordance with each such plan's past practices.

This provision requires ARINC to apply a discount rate equivalent to the prime rate "immediately prior to the Termination date." The parties disagree over whether "the Termination date" refers to the time when ARINC's Board agreed to terminate Hospodor or when he received his Notice of Termination. In determining the effective date of Hospodor's termination, the relevant sections of the EA are as follows:

> 2.14. *Termination Date.* For purposes of this Agreement, "Termination Date" shall mean ... the date specified in the Notice of Termination....

> 6. *Termination of Employment.* The Executive's employment with the Company and the Employment Term shall terminate upon the earliest occurrence of any of the following events:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (d) the termination of the Executive's employment by the Company other than for death, Cause or Disability.

> 8. *Notice of Termination.* Any purported termination of the Executive's employment by the Company or by the Executive shall be communicated by Notice of Termination to the other. For purposes of this Agreement, no such purported termination of employment shall be effective without such Notice of Termination.

ARINC used a discount rate of 8.5%, which was the prime rate on November 18, 1996, the date counsel for Hospodor received the Notice of Termination.

The Estate seeks $94,404 claiming that ARINC should have used a discount rate of 7.75%. The Estate argues that Hospodor was actually terminated on November 11, 1994, when ARINC's Board voted to terminate him and the prime rate was 7.75%. The Estate also suggests that for ¶ 2.14 and ¶ 6(d) of the EA to operate in harmony, termination must occur upon the earliest occurrence, i.e., November 11, 1994, with such date specified in the Notice of Termination. The Estate, thus, concludes that it was improper for ARINC to

attempt to make the Notice of Termination effective upon receipt.

The Court finds that for purposes of applying a discount rate under EA ¶ 7.1(b)(iv), Hospodor's date of termination was November 18, 1996, when the prime rate was 8.5%. EA ¶ 2.14(a) provides that the Date of Termination is the "date specified in the Notice of Termination," and the Notice of Termination from ARINC explicitly stated: "Termination of the employment shall be effective upon receipt of this notice." The parties have stipulated that counsel for Hospodor received the Notice of Termination on November 18, 1996. Moreover, because EA ¶ 8 states that "no . . . termination of employment shall be effective without such Notice of Termination," it follows that no termination can be effective earlier than the Notice. Accordingly, ARINC applied the proper discount rate in calculating Hospodor's benefits and no adjustment is necessary.

### 6. *Recoverable Interest*

■ The Estate is seeking to recover interest from ARINC on two separate bases. First, the Estate seeks interest on the amount by which it claims ARINC miscalculated Hospodor's benefits or approximately $145,385. Second, the Estate seeks interest on the benefits ARINC actually paid to Hospodor for the period from when ARINC sent the checks to him as a complete accord and satisfaction until the accord and satisfaction condition was removed and the checks cleared ARINC's bank or $37,222.[6]

With respect to the first interest issue, the Court concludes that no interest is recoverable because the Court has found that ARINC properly calculated Hospodor's benefits and does not owe the Estate any additional amounts.

As to the second interest issue, EA ¶ 7.1(d) requires ARINC to pay all amounts owed

under EA ¶ 7.1(b) "within five (5) days" after Hospodor's termination. In addition, EA ¶ 14 provides:

> The Company's obligation to make the payments provided for in this Agreement and otherwise to perform its obligations hereunder shall not be affected by any circumstances, including, without limitation, any set-off, counterclaim, recoupment, defense or other right which the Company may have against the Executive or others.

ARINC tendered four checks totaling $1,806,961.60 less taxes and other undisputed withholdings to Hospodor on November 21, 1994, on the condition that the checks constituted a complete accord and satisfaction. While these checks were tendered within five days of Hospodor's November 18, 1994 termination, the Estate argues that the accord and satisfaction condition prevented them from utilizing the funds.

ARINC lifted the accord and satisfaction condition by a letter transmitted by facsimile to counsel for Hospodor on the evening of December 29, 1994. After a dispute over whether the funds should be considered income for tax purposes in 1994 or 1995, the checks were eventually deposited on March 7, 1995, the day Hospodor died, and cleared March 9, 1995.

The Court finds that by attaching the accord and satisfaction condition, ARINC did not comply with EA ¶ 7.1(d). Accordingly, the Estate will be awarded interest from the date the checks were tendered, November 21, 1994, until the date the accord and satisfaction condition was lifted, December 30, 1994. Calculating simple interest at the prime rate in effect at the time, 8.5%, on the amount tendered by ARINC, $1,806,961.60, for forty days, November 21, 1994 to December 30, 1994, results in an interest amount owed by ARINC of $16,832.[7]

---

**6.** The Estate in its Post–Trial Brief states that it is seeking interest for the period "from November 21, 1994 to March 7, 1995." The Estate's expert, however, indicates that the $37,222 figure is based on interest from December 1, 1994 to March 9, 1995. Based on the Court's ruling below, this difference is immaterial.

**7.** The Court rejects the Estates contention that it is entitled to interest until March 9, 1995, when the checks cleared ARINC's bank. The accord and satisfaction condition was lifted the evening of Wednesday, December 29, 1994. Therefore, the Court finds that Hospodor was free to deposit the checks on the next business day, Thursday, December 30, 1994.

Based upon the foregoing analysis, the Court rejects the Estate's challenges of the manner in which ARINC calculated Hospodor's benefits under his Employment Agreement, Supplemental Retirement Benefit Agreement, and Retirement Income Plan. The Court, however, finds that ARINC violated its payment obligation under the EA by conditioning the checks sent to Hospodor as a complete accord and satisfaction and the Estate is entitled to interest on the benefits from November 21, 1994 to December 30, 1994. Accordingly, Judgment is entered for the Plaintiff in the amount of $16,832.

### ORDER

In accordance with the attached Memorandum, it is this 6th day of March 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That Judgment BE, and the same IS, hereby ENTERED in favor of Plaintiff in the amount of $16,832 to cover interest from November 21, 1994 to December 30, 1994; and

2. That a copy of this Memorandum and Order be mailed to counsel for the parties.