926 F.2d 223
 13 Employee Benefits Ca 1592
 June E. JORDAL, Plaintiff-Appellee,
v.
John J. SIMMONS, Joseph Castaldo, Preston McCabe, and Steven
Reynolds, as Trustees of the Carpenters Local 747
Pension Fund, Local 747 Carpenters
Pension Plan, Defendants-Appellants,
Loyal Simmons, as administrator/plan manager of Local 747
Carpenters Pension Plan, Defendant.
 No. 565, Docket 90-7535.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 21, 1990.
Decided Feb. 22, 1991.
 
 James R. Lavaute, Syracuse, N.Y. (Blitman & King, Syracuse, N.Y., of counsel), for defendants-appellants.
 Walter D. Kogut, Syracuse, N.Y. (Scolaro, Shulman, Cohen, Lawler & Burstein, P.C., of counsel), for plaintiff-appellee.
 Before TIMBERS, VAN GRAAFEILAND and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 John J. Simmons, Joseph Castaldo, Preston McCabe, and Steven Reynolds, as Trustees of the Carpenters Local 747 Pension Fund, Local 747 Carpenters Pension Plan (the 747 Trustees) appeal from a final order and judgment of the United States District Court for the Northern District of New York (Hon. Con G. Cholakis, Judge) granting plaintiff June Jordal's motion for summary judgment, denying defendants' cross-motion for summary judgment, and directing that the defendants reinstate Jordal's pension benefits and make her whole for the payments she was denied when defendants first terminated her benefits. They argue that the district court erred in holding: (1) that the 747 Trustees' termination of Jordal's pension benefit was reviewable under a de novo standard; (2) that the terms of the pension plan, although ambiguous, may have entitled Jordal to her pension; and (3) that to the extent the pension plan was ambiguous, the 747 Trustees were equitably estopped from revoking Jordal's pension benefit. Because we believe that the district court correctly applied a de novo standard of review to the actions of the Trustees in revoking Jordal's benefits, and because we find that under the language of the pension plan, Jordal's pension was properly granted and thus should not have been terminated by a successor board of trustees under a spin-off plan, we affirm without reaching the equitable estoppel issue.
 
 BACKGROUND
 
 2
 Charles Jacobs, a carpenter and member for approximately thirty years of the United Brotherhood of Carpenters and Joiners Local 747 (Local 747), was dying of cancer. Jacobs, like other employees represented by Local 747, participated in the Adirondack and Vicinity District Council Pension Fund (AVDC Fund). On August 15, 1986, because of his illness, Jacobs applied to the AVDC Fund for a disability pension, informing Loyal Simmons, Jr., the administrator and plan manager of the AVDC Fund, that he was dying. Jacobs expressed concern about plaintiff June Jordal, the woman he had lived with for the past ten years, and asked if she could be taken care of by his pension after he died. Simmons assured Jacobs that this was possible, completed the pension application for him and had him sign it. The application was for a disability pension with a contingent annuitant form of payment that designated June Jordal as Jacobs' contingent annuitant. The contingent annuitant option in the AVDC pension plan allows the named contingent annuitant, should he or she outlive the employee, to receive a percentage of the employee's reduced monthly benefit for life.
 
 
 3
 By September 1, 1986, Jacobs had become too ill to work. Interim pension payments began while his application awaited formal approval. On February 21, 1987, Jacobs died. Shortly after his death, on April 3, 1987, the AVDC Trustees formally approved Jacobs' pension application. Jordal began to receive her contingent annuitant payments in March 1987.
 
 
 4
 In the meantime, changes which would ultimately affect June Jordal's benefits were taking place within the AVDC Fund itself. Local 747, which had participated in the AVDC Fund, decided in September, 1987 to "spin-off" its assets and liabilities and create its own independent pension plan, called the Oswego Carpenters' Local 747 Pension Fund ("747 Fund"). On May 1, 1987, Local 747 formally began to make payments from its own fund. Consequently, most of the payments June Jordal received were issued by the 747 Fund. On September 2, 1987, Local 747 signed an official spinoff agreement with AVDC. Pursuant to an Agreement and Declaration of Trust, the 747 Fund adopted a plan charter ("747 Plan") identical to the AVDC Fund plan charter ("AVDC Plan").
 
 
 5
 In January 1988, the 747 Trustees re-examined the benefits that the AVDC Trustees had decided to grant to Jordal as Jacobs' contingent annuitant. The 747 Trustees concluded that Jordal was not entitled under the terms of the AVDC Plan to the pension payments she was receiving. On January 7, 1988, they decided to terminate June Jordal's pension, and demanded that she repay all of the benefits she had received up to that date.
 
 
 6
 In response to the termination, Jordal brought suit in the United States District Court for the Northern District of New York against the 747 Trustees and against Loyal Simmons, the administrator and plan manager of the 747 Fund, who is not a party to this appeal. Jordal challenged her denial of benefits under a provision of the Employee Retirement Income Security Act of 1974 (ERISA). See 29 U.S.C. Sec. 1132. The district court granted Jordal's motion for summary judgment, and ordered the defendants to make her whole for the payments she had been denied up to that point. This appeal followed.DISCUSSION
 
 I. Standard of Review
 
 7
 The 747 Trustees first argue that the district court erred in applying a de novo rather than a deferential standard of review to their decision to revoke Jordal's pension. We disagree.
 
 
 8
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court set forth the proper standard of review for actions challenging a denial of benefits under 29 U.S.C. Sec. 1132 (1985): "Consistent with established principles of trust law, we hold that a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. at 956.
 
 
 9
 The language of Bruch, however, does not seem to contemplate the fact situation we face here, where the trustees of one plan approved benefits, a spin-off occurred, and then new trustees of the new spun-off plan terminated those benefits following their interpretation of the terms of the original plan. In the instant case, the 747 Trustees examined the language of the original AVDC Plan to construe its terms and determine eligibility thereunder. In such circumstances, we interpret Bruch to mean that "the plan" to be construed to determine eligibility must mean the plan under which the revoked benefits were initially granted, not the plan under which the trustees who revoked the benefits are operating. See Heidgerd v. Olin Corp., 906 F.2d 903, 909 (2d Cir.1990) (applying de novo review under Bruch; "in the circumstances of this case," plan administrator had no discretion to award benefits). Here, it is plain that the AVDC Trustees had discretionary authority to determine Jacobs' eligibility for benefits under the terms of the original plan. But the appellants in this case are not the AVDC Trustees. They are the Trustees of a later plan, governed by a different trust agreement, which nowhere gives them discretionary authority to determine eligibility requirements for benefits under the former AVDC Plan.
 
 
 10
 The 747 Trustees fail to point to any provision that gives them discretionary authority to reconsider benefits granted by the AVDC Trustees under the terms of the AVDC Plan. They are correct in asserting that several aspects of the 747 Plan and Declaration of Trust vest discretionary authority in its Trustees as to benefits under the Local 747 Plan, giving them "full and exclusive authority to determine all questions of coverage and eligibility," but this claim has no bearing on whether they can determine questions of eligibility under the AVDC Plan. Moreover, although the 747 Plan grants the 747 Trustees the "right to recover ... any benefit payment made in error," the determination of whether a payment has been made in error still turns on an interpretation of eligibility under a specific plan; thus, this provision does not advance the 747 Trustees' position because it does not resolve the question of whether they have authority to determine eligibility under a former plan. Nor do other documents regulating the 747 Fund add weight to their argument. The 747 Trustees cite, for example, provisions of the spin-off agreement between 747 and AVDC, which allocate the burdens between the two groups of trustees so that the 747 Trustees must notify the AVDC Trustees of issues of interpretation relating to the AVDC fund, but still remain responsible for dealing with any claims that arise regarding the AVDC fund. However, these provisions do not confer discretionary authority on the 747 Trustees to construe the terms of the AVDC Plan. Furthermore, the 747 Trustees' reliance on Weisler v. Metal Polishers Union, 533 F.Supp. 209 (S.D.N.Y.1982) to the contrary is misplaced. In that case, a subsequent group of trustees was permitted to alter payments authorized by a former group, but there, no spin-off had occurred and both groups of trustees were operating under the same plan.
 
 
 11
 We agree with the district court's determination that nothing in the 747 Plan, Declaration of Trust, or the spin-off agreement allows the 747 Trustees discretion to review and deny benefits granted by the AVDC Trustees. We therefore hold that the district court did not err in deciding that a de novo standard of review applied to the denial of benefits in this case.
 
 
 12
 The 747 Trustees contend, however, that such a holding will "make it impossible" for them to fulfill their fiduciary duty to see that the Plan does not spend money in violation of its terms, see Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912 (2d Cir.1989), and will preclude them from ever revoking benefits granted by the AVDC Trustees under the AVDC Plan. This argument misconstrues the nature of our holding. We do not rule on the general right of the 747 Trustees to reevaluate benefits granted by the AVDC Trustees; all we hold is that when such a reevaluation leads to litigation, a district court will apply a de novo rather than a deferential standard of review to the Trustees' action.
 
 
 13
 We turn then to the merits.
 
 
 14
 II. Plaintiff's Entitlement to Benefits Under the Pension Plan
 
 
 15
 The 747 Trustees contend that they were correct to revoke Jordal's benefits because the original decision of the AVDC Trustees to grant the pension in question was forbidden by the terms of the AVDC Plan. To support their claim, they advance two arguments, both of which are unpersuasive.
 
 A. The Contingent Annuitant Option
 
 16
 First, they contend that by the clear language of the AVDC Plan, a contingent annuitant option was not available for disability pensions such as the one that Jacobs chose. Section 9.01 of the AVDC Plan provides:
 
 
 17
 In lieu of receiving his monthly pension benefit payment in the forms described in Section 6.05 and 6.06 or in Article 8, an Employee may elect to receive his Early or Normal Pension benefit in one of two other forms [one of which is the contingent annuitant option].
 
 
 18
 Defendants argue that by the language of this section, a contingent annuitant option is available only for "early" or "normal" pensions, not for the disability type of pension which Jacobs received due to his illness.
 
 
 19
 The flaw in their argument lies with the reference to Sec. 6.06 in the provision above. Section 6.06 of the Plan governs disability pensions. Therefore, even though disability pensions are not mentioned in the second clause of the sentence quoted above, they are referred to in the first. The 747 Trustees try to explain this away by noting that Sec. 6.06 governs, among other things, the terms of converting a disability pension into a normal one; thus, they assert that this mention of Sec. 6.06 was intended to refer to only those disability pensions that have converted into normal pensions. However, Sec. 6.06, entitled "Duration of Disability Pensions," governs several other aspects of disability pensions as well, such as the timing of installments, the determination of when disability pension payments begin and end, and the termination of disability payments for employees who recover from their disability. It is not at all clear that the reference to Sec. 6.06 exists in Sec. 9.01 of the Plan in order to refer to only the one aspect of Sec. 6.06 that defendants seize upon. We conclude that the provision in question could be interpreted to allow for precisely the option Jacobs chose. Thus, we reject the 747 Trustees' argument that the decision of the AVDC Trustees to grant Jordal's benefit was erroneous under the terms of that Plan, and that the 747 Trustees were therefore bound to correct the previous Trustees' error. On the contrary, by the terms of the AVDC Plan, the AVDC Trustees' action was justified.
 
 B. The Time Requirement
 
 20
 The 747 Trustees next assert that even if the form of pension Jacobs chose was available, he failed to meet the procedural requirements of the AVDC Plan in applying for it. At issue is the interpretation of Sec. 9.04 of the AVDC Plan, which provides:
 
 
 21
 Either [the contingent annuitant option or the "ten year certain option"] may be elected or rescinded by the Employee up to 36 months prior to the effective date of his pension. An option may not be elected or rescinded by the Employee within 36 months prior to the effective date of his pension unless he satisfies all reasonable requests made by the Trustees to insure against actuarial selection against the Plan.
 
 
 22
 The 36 month period is reduced to 24 for pensions effective after June 30, 1976.
 
 
 23
 An "actuarial selection against the Plan" occurs when a participant's selection of an optional form of benefit violates the actuarial assumptions that underlie pension plan calculations.
 
 
 24
 Since Jacobs elected the contingent annuitant option less than 24 months prior to the effective date of his pension, the 747 Trustees contend that this violated the terms of Sec. 9.04. But their argument misconstrues this section. Section 9.04 also provides that the waiting period is not required if the applicant "satisfies all reasonable requests made by the Trustees to insure against actuarial selection...."
 
 
 25
 The AVDC Trustees did not have to grant Jacobs' pension. That they did so presumably indicates that they were satisfied that there would be no actuarial selection against the Plan. According to the terms of the AVDC Plan, the AVDC Trustees act as "sole judges of the standard of proof required" in administering it. Although Jacobs had already died before his pension was approved, perhaps his application alone was enough to satisfy the Trustees that there would be no actuarial selection against the Plan without need for any "reasonable requests;" perhaps they had already made such requests they may have had of Jacobs or of his representative. If the Trustees did not make any requests of Jacobs, then he satisfied "all reasonable requests"--in this case, none. Thus, we reject defendants claim that the AVDC Trustees violated the procedural rules of the Plan in granting the pension to Jacobs.
 
 
 26
 Contrary to the 747 Trustees' argument, our decision does not implicate the prohibition announced by this Court in Dardaganis v. Grace Capital, Inc., 889 F.2d 1237, 1241 (2d Cir.1989), which precluded varying the terms of written pension documents or permitting "trustees to waive the right of beneficiaries to strict adherence by fiduciaries...." Here our decision does not vary the terms of the written Plan; rather, it upholds them.
 
 
 27
 Because we affirm the district courts' decision based on an interpretation of the terms of the pension Plan, we need not address the 747 Trustees' claim that the district court erred in finding that they should be equitably estopped from denying Jordal's benefit. Nor do we need to address Jordal's contentions that the result reached by the district court was further justified based on 29 U.S.C. Sec. 1411(b)(2), or on 29 U.S.C. Sec. 1055(c)(7).
 
 
 28
 Affirmed.