42 F.3d 1385
 18 Employee Benefits Cas. 2931, Pens. Plan Guide P 23,905
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Delma C. GENTRY, Plaintiff-Appellant,
v.
ASHLAND OIL, INC., Defendant-Appellee.
 No. 93-1425.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1994.
Decided Dec. 20, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CA-87-364-5)
 ARGUED: Richard E. Hardison, Sr., Beckley, WV, for appellant. Charles M. Surber, Jr., Jackson & Kelly, Charleston, WV, for appellee. ON BRIEF: Michael D. Foster, Jackson & Kelly, Charleston, WV, for appellee.
 S.D.W.Va.
 VACATED AND REMANDED.
 Before WIDENER and WILKINS, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Delma C. Gentry appeals the judgment of the district court affirming the decision of the plan administrator denying Gentry continued benefits under the Ashland Oil, Inc. long-term disability plan. Because we conclude that the district court incorrectly applied an abuse of discretion standard in reviewing the decision of the plan administrator, we remand for additional proceedings.
 
 I.
 
 2
 On February 19, 1979, Gentry was involved in an automobile accident. During the accident, Gentry's head was propelled through the windshield, and she was treated for the resulting head injuries at a local hospital. Gentry contends that she began to experience migraine headaches soon after the accident. However, Gentry returned to her employment with Ashland and worked without difficulty for over a year. At the time of the accident, Gentry was a member of Ashland's long-term disability plan (the plan), which is an "employee benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974, (ERISA), 29 U.S.C.A. Sec. 1002(3) (West Supp.1994).
 
 
 3
 In July 1981, Gentry applied for disability benefits under the plan, claiming cervical arthritis, migraine headaches, and eye problems. She was placed on disability due to migraine headaches and chronic anxiety disorder with depression and began receiving benefits under the plan in September 1981.
 
 The plan provided in pertinent part:
 
 4
 If your disability is related to mental/emotional conditions, benefits will be paid only for a period of 24 months. Benefits will not be continued after 24 months unless you are confined in a hospital or other institution.
 
 
 5
 The term "mental and/or emotional" includes neurosis, psychoneurosis, psychopathies, psychosis, and any other mental and emotional disease or disorder of any type.
 
 
 6
 When Gentry had been receiving benefits for nearly 24 months, Ashland began to investigate whether continued payments were warranted. The Ashland plan administrator wrote to Gentry's treating psychiatrist, Dr. Hasan, requesting information concerning whether Gentry's disability was primarily mental or physical. Dr. Hasan responded that he believed that Gentry was disabled, that both physical and psychological factors played a role in the disability, but that in his opinion psychological factors played the greater role. After completing its investigation, the plan administrator notified Gentry that it was terminating her benefits under the provision of the plan limiting payments for mental disabilities to two years.[1]
 
 
 7
 Gentry sought an initial reconsideration of the decision in December 1983. By letter of December 19, 1983, the plan administrator again denied benefits. In January 1984, Gentry wrote to Ashland that Dr. Hasan "feels now that my past head injury may be causing my migraine headaches and many other related problems." She informed Ashland that Dr. Hasan would be performing additional tests and that she would forward the reports when they became available. The plan administrator responded that it would be happy to review any medical evidence indicating that her condition was related to an organic or traumatic condition and instructed her to send all medical reports since the time of the accident for review.
 
 
 8
 Thereafter, Gentry forwarded additional medical information to Ashland. A letter from a clinical psychologist opined that Gentry experienced some organic impairment, but the impairment noted was unrelated to her headaches or depression. An opinion from Dr. Dy, Gentry's neurologist, stated that her headaches did not result from any organic injury from the automobile accident, but that they may have resulted from the psychological trauma of the accident. By letter of June 28, 1984, the plan administrator again denied benefits, concluding that the medical evidence did not indicate an organic disorder.
 
 
 9
 Gentry subsequently was examined by neurologist Dr. Steven Dreyer in July 1985. He found "evidence of moderate to severe cortical impairment, with the left [cortical] hemisphere functioning at a significantly less efficient level than right cortical hemisphere"--a result consistent with a closed-head injury. Additional testing was completed by Dr. Dreyer in February and March 1986. This testing yielded "evidence of severe bilateral cortical impairment, with the left cortical hemisphere functioning even less efficiently than the right." However, Dr. Dreyer opined that the "ongoing deteriorative process suggests that there is more than just the automobile accident involved ... [because f]rom a pure[ly] traumatic standpoint, [Gentry] would be expected to have leveled off and perhaps have demonstrated some improvement over time." The doctor noted that there was a history of Alzheimer's Disease in the family and indicated that this type of process may be involved in addition to post-traumatic signs of impairment.
 
 
 10
 Gentry filed this action in state court in April 1987, claiming that Ashland had improperly denied her continuing long-term disability benefits. Ashland removed the case to federal court on the basis of ERISA and moved for summary judgment. The district court concluded that the evidence indicated that the plan administrator had not acted arbitrarily and capriciously in denying Gentry continuing benefits. However, because additional evidence relating to Gentry's disability--an October 1987 letter from Dr. Sidney Lerfald, M.D.--was included in the record, but had not been considered by the plan administrator, the district court remanded for the plan administrator to reconsider whether continuing benefits should be awarded.
 
 
 11
 The plan administrator again reviewed Gentry's claim for benefits, including the new information she submitted. The administrator determined:
 
 
 12
 The medical evidence submitted in an attempt to support a physical cause for Ms. Gentry's disability is actually conflicting as to whether left or right hemispheric disturbance is present, and does not conclusively rule out a psychological basis for the physical symptoms. It does not offer any substantive new evidence to conclude the prior claim determination was in error.
 
 
 13
 Gentry's claim was denied April 18, 1989.
 
 
 14
 Following this denial, counsel for Gentry wrote to the plan administrator, pointing to additional medical information that the administrator had not considered--a letter from Dr. Alexander that specifically opined that Gentry's disabilities resulted from physical injuries obtained in the 1979 automobile accident. The letter also explained the reasons for the diagnosis and why it was consistent with the medical evidence. By letter dated November 14, 1989, Ashland responded to counsel's letter, noting that under the review procedures adopted by the plan no additional review was allowed. However, the letter addressed the points raised by counsel and Ashland's reasons for denying benefits.
 
 
 15
 Gentry then petitioned the district court to reinstate the case. Following reinstatement, Ashland once again moved for summary judgment. The district court determined that the Amended and Restated Ashland Oil, Inc. Employees Group Term Life Insurance and Disability Benefits Trust Agreement provided Ashland and the plan administrator with discretionary authority to determine benefits under the plan. As a result, the district court determined that it was appropriate to apply an abuse of discretion standard in reviewing the plan administrator's benefits decision and held that Ashland had not abused its discretion in denying continuing benefits because it had objectively concluded that the weight of the medical evidence revealed that Gentry's disability arose from a mental or nervous disorder rather than an organic brain injury. The district court granted summary judgment to Ashland on this basis. Gentry appealed to this court.
 
 
 16
 During our review, we determined that the record did not support the deferential standard of review applied by the district court because the summary plan descriptions which had been included in the record did not provide the plan administrator with discretionary authority. However, because the record was incomplete in that it did not include all of the applicable plan documents, we remanded for the district court to supplement the record, determine whether an abuse of discretion standard of review should properly apply to the plan administrator's decision, and conduct a de novo review in the first instance if it determined that an abuse of discretion standard did not apply.
 
 
 17
 On remand, Ashland supplemented the record, but the additional documents supplied by Ashland did not give the plan administrator discretion to determine eligibility for plan benefits or to interpret the terms of the plan. Nevertheless, Ashland argued to the district court that this court had misunderstood which documents were part of the record in the prior appeal and that p 5.2 of the trust agreement, on which the district court had previously relied and which had been included in the record, provided Ashland the discretion that was dispositive of the standard of review. The district court accepted this argument, ruled that it had properly applied an abuse of discretion standard to the plan administrator's denial of benefits, and again entered summary judgment in favor of Ashland. Gentry now appeals that ruling.
 
 II.
 
 18
 "When reviewing a denial of benefits under ERISA, a threshold question for reviewing courts is 'whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe "doubtful" provisions of the plan itself.' " Davis v. Burlington Indus., Inc., 966 F.2d 890, 894 (4th Cir.1992) (quoting de Noble v. Vitro Corp., 885 F.2d 1180, 1186 (4th Cir.1989)). The denial of benefits is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan grants such discretion to the plan administrator, "a reviewing court may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse" of discretion. Davis, 966 F.2d at 895 (internal quotation marks omitted).
 
 A.
 
 19
 On remand, Ashland submitted the affidavit of Mark Bongard, a benefits attorney employed by Ashland. Attached to his affidavit were the Ashland disability plans from 1977 to date. The plan attached as Document 2 was in effect from February 1980 through June 1984.[2] The plan attached as Document 3 was effective from July 1984 through November 1992. Because all of Ashland's determinations with regard to Gentry's benefits were made between 1983 and 1989, only these plans are relevant. Neither of these plans grants the plan administrator any discretionary authority to determine benefits.[3]
 
 
 20
 Although the applicable plan documents do not contain language granting discretion, Ashland amended all of its benefit plans to grant discretionary authority to plan administrators on April 21, 1989, in response to the Bruch decision, as evinced by minutes from the meeting at which the amendment was adopted. Ashland maintains that the final denial of Gentry's claim was made on November 11, 1989, and therefore, it had discretionary authority to make benefits determinations under the plan. However, Ashland's position is not supported by the record. The letter sent to Gentry's counsel by Ashland on November 14, 1989 stated that no further review of Gentry's claim was permitted under the plan and merely responded to points raised by counsel. Thus, the final denial of Gentry's claim was April 18, 1989--three days before the amendment granting discretion to the plan administrator was adopted.
 
 B.
 
 21
 Alternatively, Ashland contends that a provision contained in the Amended and Restated Ashland Oil, Inc. Employees Group Term Life Insurance and Disability Benefits Trust Agreement, on which the district court relied, provided it with discretion to determine benefits under the plan. Paragraph 5.2 of the trust agreement provides in pertinent part:
 
 
 22
 Determination of Rights and Benefits of Persons Claiming Interests in the Trust Fund; Enforcement of Trust: The Company and Plan administrators shall have complete control and authority to determine the existence, nonexistence, nature and amount of the rights and interests of all persons under the Plan and in or to the Trust Fund, and the Trustee shall have no power, authority or duty in respect of such matters, or to question or examine any determination made by the Company and Plan administrators, or any direction given by the Company and Plan administrators to the Trustee.
 
 
 23
 (Emphasis added). Reading the highlighted language in context, it is clear that the intention of this paragraph is to allocate the responsibility for making determinations of who is entitled to assets held by the trustee under the trust agreement to Ashland and its plan administrators rather than the trustee. Ashland argues that the highlighted language grants it sufficient discretion to interpret the plan to make an abuse of discretion standard appropriate in reviewing benefits determinations. We disagree.
 
 
 24
 The Supreme Court decision in Bruch, and the many decisions relying on it, refer to the benefit plan providing discretion to the plan administrator. See, e.g., Bruch, 489 U.S. at 115. There is no question that the trust agreement to which Ashland refers is not the benefit plan. Prior to 1980, the Ashland disability plan had been funded through an insurance company. In 1980, Ashland began to self-fund the plan and entered into a trust agreement with a bank to act as trustee for the funds it would set aside for disability benefits. This trust agreement was later continued and restated in the 1985 trust agreement to which Ashland refers. The trust agreement is plainly a side agreement facilitating the funding of the plan--but is not the plan itself.
 
 
 25
 Although several courts have discussed discretionary language found in the trust agreement, see Allison v. Dugan, 951 F.2d 828, 832 (7th Cir.1992); Saracco v. Local Union 786 Bldg. Material Pension Fund, 942 F.2d 1213, 1215 (7th Cir.1991); Jordal v. Simmons, 926 F.2d 223, 225-26 (2d Cir.1991); Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 481 (9th Cir.1990), in each of these cases, the trust agreement was the plan.[4] Thus, these cases do not support a conclusion that discretion can be granted in a trust agreement that is not the plan. Accordingly, we find no authority to support Ashland's position, and in our view, it conflicts with the plain statement of the Supreme Court in Bruch. Consequently, we conclude that because the grant of discretion is not included within the plan or the summary plan descriptions, the language in the trust agreement is insufficient to confer discretionary authority on Ashland or the plan administrator to make benefits determinations or interpret plan terms. Therefore, the district court improperly applied an abuse of discretion standard in reviewing the plan administrator's decision.[5]
 
 C.
 
 26
 Finally, Ashland asserts that even if a de novo review is appropriate, Gentry is not entitled to continued benefits. It claims that whether Gentry's disability was caused by a physical injury is irrelevant because, in any event, her disability is a mental disability, and therefore she would not be entitled to benefits beyond 24 months. The definition of "mental and/or emotional" contained in the plan does not include mental symptoms that are physical in origin, and throughout the review process Ashland interpreted the 24-month limitation as not applying if Gentry could establish that her mental problems were a result of the physical injury she received in the automobile accident. Thus, we do not agree that Gentry would not be entitled to continuing benefits if the district court concludes that her disability is the result of a physical injury sustained in the 1979 automobile accident.
 
 III.
 
 27
 Because the benefit plans in effect when Ashland denied Gentry's claim did not give the plan administrator discretion to determine benefits or construe plan terms, the denial of benefits should be reviewed de novo. Since de novo review requires determinations and findings of fact that this court is not best equipped to make, see Glocker v. W.R. Grace & Co., 974 F.2d 540, 543 (4th Cir.1992), we remand the case to the district court to conduct this review in the first instance.
 
 
 28
 VACATED AND REMANDED.
 
 
 
 [1]
 It is undisputed that Gentry was not hospitalized due to her disability
 
 
 [2]
 This document states that it is the Summary Plan Description rather than the plan, but since Bongard by affidavit states that it is the plan in effect at that time, and there being no evidence to the contrary, for purposes of summary judgment, we accept this as the plan
 
 
 [3]
 The plan effective beginning in December 1992 added language granting the plan administrator discretion, but because this language was added after Gentry's benefit determinations were made, it cannot retroactively grant the administrator discretion he did not have at the time of those decisions
 
 
 [4]
 Although the Jordal court did look to see if documents outside the plan granted the plan administrator discretion to make the benefits decisions at issue, because the documents were found not to provide discretion, it was not called upon to decide if discretion conferred in documents outside a plan would be sufficient to make deferential review appropriate. Jordal, 926 F.2d at 225
 
 
 [5]
 Ashland recognizes that the trust agreement is not a part of the plan, but maintains that the language in the trust agreement nevertheless is sufficient. It contends that under 29 U.S.C.A. Sec. 1104(a)(1)(D) (West Supp.1994), ERISA fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan" and that courts have held that trust agreements are "documents and instruments governing the plan" within the meaning of Sec. 1104(a)(1)(D). See Morse v. New York State Teamsters Conference Pension & Retirement Fund, 580 F.Supp. 180, 186 (W.D.N.Y.1983), aff'd, 761 F.2d 115 (2d Cir.1985); Winpisinger v. Aurora Corp. of Ill., Precision Casting Div., 456 F.Supp. 559, 567 (N.D. Ohio 1978). Section 1104(a)(1) provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--... in accordance with the documents and instruments governing the plan." The decisions on which Ashland relies held that this provision requires ERISA fiduciaries to comply with trust agreements as "instruments governing the plan." In our view, even if the failure to comply with the trust agreement under these circumstances would constitute a breach of fiduciary duty by Ashland, that issue is essentially irrelevant in deciding whether the language in the trust agreement is sufficient to provide the discretionary authority to the plan administrator necessary to require a reviewing court to defer to the decision of the plan administrator