Donald GALLO, Plaintiff–Appellee,

v.

Thomas MADERA, Anthony Napolitano, Maurice Foley, Alfred Gerosa, Michael Melnick and Fred C. Stoll, Trustees of the Cement and Concrete Workers District Council of New York Pension Fund, Defendants–Appellants.

No. 1006, Docket 97–7815.

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1998.

Decided Feb. 10, 1998.

K. Dean Hubbard, Jr., Eisner & Hubbard, P.C., New York City, for Plaintiff–Appellee.

Angelo R. Bisceglie, Bisceglie & Friedman, P.C., Newark, NJ, for Defendants–Appellants.

---

* The Honorable Gerald W. Heaney, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Enhanced benefits are actually calculated in accord with formulae set forth in Paragraphs 2

Before: CALABRESI, CABRANES, and HEANEY,* Circuit Judges.

CALABRESI, Circuit Judge:

Defendants-appellants, various officials overseeing an employees' retirement fund under ERISA, appeal from the denial of their motion for summary judgment, the denial of their post-trial motion for reconsideration, and the grant of summary judgment for plaintiff-appellee Donald Gallo. Because we find no error in the district court's analysis, we affirm substantially for the reasons stated by the District Court (Denis R. Hurley, *Judge*). We write, however, to address a conflict between two district courts within our circuit concerning interpretation of the very same pension plan. We are not unmindful of the fact that the specific argument relied upon in the conflicting case, *Meagher v. Cement and Concrete Workers District Council Pension and Welfare Fund*, 1992 WL 75128 (S.D.N.Y. Mar. 30, 1992), was not directly passed on by the court below. But on appellants' insistence—since they claim that the district court abused its discretion in not addressing that argument—and to resolve the inter-court split, we reach, and ultimately reject, the *Meagher* theory.

1.

The opinion below offers a succinct summary of the terms of the plan. Article Two, "Eligibility for Pensions," provides for three different types of pension: regular (§ 201), disability (§ 206), and early (§ 207). (An employee opting for early retirement, depending on her length of service, may have to take a reduced pension. § 208.) Article Three, "Amount of Pension Benefits," essentially provides for two levels of pension benefits, which, for convenience, we will call "basic" and "enhanced." Eligibility for the different levels of benefits under Article Three are outlined in the first and second paragraphs, respectively, of § 302(a).[1]

Under § 207, there are three ways an employee can take early retirement, *i.e.* re-

and 3 of § 302(a). For simplicity, we will refer to enhanced benefits as being calculated under Paragraph 2.

tire before the age of 60. The first, defined by § 207(a), is available to anyone with over 15 years of credited "current service" who is over age 55. This option, however, results in a reduction in benefits whose size depends on how much below 60 the employee is at the time of retirement. The second, found in § 207(b), provides that an employee who is over 55 and with 25 years of service (of which 15 must be "current service") also may retire before reaching 60, but can do so without any age-based reduction in benefits. The third, outlined in § 207(c)—the so-called "Any-Age" Provision—allows an employee under 60 to retire at any age, without reduction of benefits, if the employee has 25 years or more of "current service," at least one of which was after December 31, 1980. ("Current service" is defined in the Plan's Article One as a year of employment subsequent to July 1, 1953. § 111.) Thus it is quite possible for an employee over 55 to be eligible for early retirement under *both* §§ 207(b) *and* 207(c) (and, *à fortiori*, § 207(a)), but an employee under 55 may seek early retirement only under § 207(c).

In 1982, the trustees amended the Any-Age retirement provision to incorporate a break-in-service exclusion, by adding the clause "and who had not incurred a two consecutive year break in service in said 25 years." to § 207(c). The trustees did not, however, graft any such prerequisite onto § 207(b).[2]

Under § 302(a), Paragraph 1 outlines the *basic* calculation for pension benefits. Paragraph 2 uses a considerably more generous, *enhanced,* calculation formula. It does so in language mapping § 207(c), and applies to employees with over 25 years of current service. Significantly, however, there is no break-in-service requirement in § 302(a) with respect to the 25 years of current service. Thus, on the plan's plain language, an em-

ployee with 25 years or more of current service (one of which is after 1980) who retires, for example, under § 207(b), appears to be entitled to receive the enhanced benefits payable under Paragraph 2 of § 302(a), regardless of breaks in service.

In the case before us, it is conceded that plaintiff was eligible for § 207(b) early retirement, and he retired at age 58 pursuant to that clause. He was, however, denied enhanced retirement benefits under Paragraph 2 of § 302(a)—solely on the basis of an alleged break in his service. Among other forms of relief, plaintiff originally asked the trustees to waive the break-in-service provision under § 207(c), apparently believing that if he were permitted to retire under § 207(c), defendants' objections to his enhanced benefits would also be waived.[3] He was unsuccessful in this request, and after matters could not be resolved amicably, he sued. In due course, he moved for summary judgment.

In opposing the motion, the appellants argued strenuously that notwithstanding the clear language of the plan, Paragraph 2 of § 302(a) should be read to have "imported" the break-in-service amendment from § 207(c).[4] They further argued that as trustees of the pension plan, their interpretations of the plan's provisions were entitled to deferential review. Plan trustees are entitled to deference when the terms of the plan afford them discretionary authority over benefits. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). Although the court below considered the question close, it accepted defendants' argument that a conferral of discretion need not be found within the four corners of the plan, *see Jordal v. Simmons,* 926 F.2d 223, 225 (2d Cir.1991), and

---

2. There is much dispute over whether the plaintiff had a break in his service. The argument centers on the scope of reciprocal agreements whereby employees earn cross-credit for work done for other unions, and plaintiff's allegedly fraudulent credit under these agreements. For this appeal from summary judgment, however, we will assume that plaintiff had the alleged two-year break in service.

3. The trustees had waived the break-in-service provision in the past with respect to other employees.

4. Since they conceded that plaintiff was eligible for § 207(b) retirement, appellants necessarily also conceded that the break-in-service amendment should not be "imported" into § 207(b).

that a deferential standard of review was appropriate in this case.[5]

Judge Hurley nevertheless held that the trustees' denial of Gallo's benefits, since it contravened the plain language of the plan, could not be sustained even under a deferential standard of review.[6] He therefore granted plaintiff's motion for summary judgment. We agree with the district court's analysis and its holding on this point.

### 2.

■ On a motion to reconsider, filed by new counsel, defendants argued that § 508 (and its complement, § 301(k)) should have governed Gallo's pension benefits and barred any enhancement. Under § 508, an employee who leaves service may be placed on something called "Deferred Pension Status" as follows:

> [A]n employee under age 60 who has 10 or more years of service for vesting purposes in force, and who works less than 400 hours ... in each of two successive calendar years, shall be deemed to be a former employee on Deferred Pension Status and shall retain a vested interest in his accrued benefit under Section 302....

Section 508.

Deferred Status is not irrevocable, however:

> If a former employee on Deferred Pension Status returns to work ..., he will be deemed to be an active employee for each calendar year worked [thereafter] and *shall continue to increase* his accrued benefit for such calendar year of credit.

*Id.* (emphasis added).

On the other hand, if an employee on Deferred Status does not return to work, he remains on Deferred Status, and receives a special pension when he eventually reaches retirement age:

> A person on Deferred Pension Status with 15 or more years of service shall upon attainment of age 55 be considered as an employee entitled to Pension Benefits.... Persons ... with less than 15 years of service [will be so at] age 60 ...

*Id.*

Thus, Deferred Status works as a forfeiture-prevention measure for employees who have made at least 10 years of contribution to the plan, but then left service and have not returned.[7] Upon their eventual retirement from whatever they may then be doing, they are eligible for a special pension, calculated under § 301(k).[8] If they return to work for the Union, however, they can re-activate themselves. They will then be removed from Deferred Status and continue to earn years of service for their eventual, ordinary pension, where they may be entitled to basic or enhanced benefits.

On appeal, as in their motion for reconsideration, appellants contend that this Deferred Status provision—on its own force, and regardless of the § 207(c) amendment—should have controlled plaintiff's benefits. Under this theory, plaintiff's benefits should have been calculated under two different formulae: one for the years plaintiff worked prior to his break in service (as if he had retired as a Deferred Status pensioner when he first broke service) and another for the years subsequent to his return to work (as if he were an ordinary beneficiary of the plan with respect to these post-return years). Furthermore, appellants argue that the pre-break years should not be considered "cur-

---

5. Without deciding the issue, we will, for purposes of this appeal, assume, *arguendo*, that *Firestone* deference was due.

6. The explanatory note to employees entitled "Your Plan" contains no indication that benefits would be withheld in such a fashion, nor do any of the hypothetical examples provided in a plan description distributed to employees suggest such a result. Moreover, in a notice pertaining to the § 207(c) amendment, the trustees assured the plan beneficiaries that there were no other material changes to the plan.

7. Employees who work for less than ten years (for vesting purposes) apparently forfeit their entitlements altogether if they leave service.

8. Technically, Deferred Pension benefits could be considered a third type of benefit (which might be termed "special") under Article Three of the plan (in addition to the "basic" and "enhanced" benefits mentioned above). Pensioners eligible only for "special" benefits receive different disability benefits from retirees who are eligible for "basic" or "enhanced" benefits. These details are not, however, relevant to our analysis.

rent," for purposes of determining whether § 302(a), Paragraph 2's 25–year "current service" prerequisite for enhanced benefits has been met. This claim is made notwithstanding the fact that the definition of "current service" in § 111 of the plan contains absolutely no such break-in-service qualification.

The court below rejected this argument as newly raised. Indeed, the record was clear that appellants had not used this novel § 508 formula in previously determining plaintiff's pension benefits. Judge Hurley therefore held that the argument was untimely and that it would be "an abuse of process" to let appellants try this new tack on a motion for reconsideration. The court also expressly declined to follow *Meagher*, refusing to re-open its own judgment on appellants' suggestion that it had "overlooked" that opinion.

*Meagher* had been brought under the same pension plan, and involved an appeal by a pensioner whose benefits were, in fact, assessed under the bifurcated § 508/ § 301(k) approach. In that litigation, the plaintiff focused his attack on his belief that he had not had a break in service (because his break was involuntary), and, thus, that he should be eligible for retirement under § 207(c) regardless of any § 508 argument. The court, under a deferential standard of review, upheld the trustees' determination regarding the break in service, and also upheld their calculation of benefits. Without addressing the definition of "current service" in the plan, it rejected the plaintiff's case with the following terse statement:

> [Plaintiff's] argument is premised on his belief that he holds thirty years of current service, while on the contrary, as discussed extensively in defendants' papers and this opinion, he holds 19 years of deferred pension status service, and only 11 years of current service *as consistently defined by the pension fund trustees,* due to his three year successive break in service.

1992 WL 75128, at *4 (emphasis added).

█ In declining to address appellants' § 508 argument in the instant case, the court below faulted the appellants for not raising it in their submitted motions and memoranda. On appeal, the appellants protest this characterization, and refer us to an explicit mention to § 508 in some of the supporting affidavits to their motion papers.[9] And, they go so far as to call the § 508 theory the "linchpin to the [trustees'] calculation of the plaintiff's pension benefits." While we do not agree that the trial judge erred in declining to address this argument, we will grant appellants' request to consider their "linchpin," as part of our duty to consider the record as a whole in determining the presence of genuine issues of material fact. *See Jiminez v. Dreis & Krump Mfg. Co.,* 736 F.2d 51, 53 (2d Cir.1984) (citing, *inter alia,* 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2739, at 527 (2d ed.1983)).

█ The argument, however, is meritless. Even when trustees of a pension plan are entitled to deference in interpreting the terms of the plan, deference cannot be so broad as to permit them to graft additional requirements onto unambiguous plan definitions. *See Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.1983). Section 508, by its plain language, enables a previous contributor to the plan to retain his contributions as a Deferred Status member if he was part of the plan for 10 years. It also allows him to rejoin the plan, and end his Deferred Status, if he returns to qualifying work. In doing this, § 508 nowhere imposes any permanent penalty for breaking service.[10] Indeed, by using the words "shall continue to increase," the provision makes clear that a hiatus in Deferred Status is a temporary suspension of current service, not an outright termination.

To read it otherwise—as the trustees have—is arbitrary and capricious. We have made clear that "[w]here the trustees of a plan impose a standard not required by the

---

9. Judge Hurley did acknowledge that it was "mentioned briefly, in two affidavits supplied by Defendants in support of their first motion," but found this insufficient to justify reconsideration.

10. In contrast, § 207(c) does impose a permanent penalty for a break in service. An employee with a two-year break, whenever it may occur, is forever ineligible (absent discretionary waiver by the trustees) for the Any–Age retirement benefits.

plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Id.* And the fact that the trustees have applied this reading with respect to another beneficiary in the past is of no moment. Consistency cannot excuse impermissibility. It follows that the trustees' interpretation must fail even under a deferential standard of review.[11]

This court does not ignore the trustees' claim that it was their intention to have Paragraph 2 of § 302(a) serve as a complement to § 207(c). But their intention to act cannot excuse their failure to do so. (And when they altered § 207(c), they clearly left § 302(a) untouched.) Nor may they cobble up fanciful readings of other sections of the plan, post hoc, in order to rectify their error.

■ We have reviewed all the other arguments advanced by the appellants, including their statute of limitations defense,[12] and find them to be without merit. The judgment of the district court, therefore, is AFFIRMED.[13]

---

**11.** To the extent that *Meagher*'s holding rests on this reading of the plan, it is in error.

**12.** The appellants contend that by mentioning breach of fiduciary duty in one of his counts, the plaintiff converted his action for enforcement of rights and recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) into one under 29 U.S.C.

§§ 1104(a) and 1132(a)(2) for breach of fiduciary duty (which has a shorter statute of limitations, *see id.* at § 1113). We disagree.

**13.** Nothing in this opinion should be read to speak to the eligibility of plaintiff for benefits for the years during which he was allegedly not in valid service.